**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION**

| | | |
|---|---|---|
| **STATE OF ARKANSAS,** *ex rel.* | ) | |
| **TIM GRIFFIN, ATTORNEY** | ) | |
| **GENERAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:23-cv-01038-SOH** |
| | ) | |
| **v.** | ) | **Removed from Union County** |
| | ) | **Circuit Court, Ark.** |
| **TIKTOK INC., TIKTOK PTE. LTD.,** | ) | **Case No. 70CV-23-135** |
| **BYTEDANCE INC., and** | ) | |
| **BYTEDANCE LTD.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND TO
THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ......................................................................................................................3

     I.       Federal-Question Jurisdiction Requires a Federal Question...........................................4

     II.     The State's State-Law Claims Do Not Arise Under Federal Common Law. ..............11

CONCLUSION................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page**

*AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F.4th 551 (1st Cir. 2021)....................8

*Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298 (1994)........................................10

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
    25 F.4th 1238 (10th Cir. 2022) ................................................................................10, 12

*Bell v. Hershey Co.*, 557 F.3d 953 (8th Cir. 2009) ....................................................................4

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003)............................................................12

*Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*,
    561 F.3d 904 (8th Cir. 2009) .........................................................................................5, 7

*Chicago Trib. Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001 (7th Cir. 2012) ....................10, 11

*City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) ...............................................12

*City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981)................................................13

*City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021) ............................................12, 15

*City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020)........................................................12

*Cooper Clinic, P.A. v. Mercy Clinic Fort Smith Communities*,
    No. 2:14-cv-2233, 2015 WL 437571 (W.D. Ark. Feb. 3, 2015) ...............................................5

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006) ..............................3, 6, 8, 10

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ........4, 6, 8, 9, 10

*Gunn v. Minton*, 568 U.S. 251 (2013)...............................................................................4, 8

*Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743 (2019) .................................................11

*Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022) .................................12

*Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804 (1986)....................................................9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016)............................5

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).................................................................12

*Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023)...............................12

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012)................................................9, 10

*New York ex rel. Cuomo v. Dell, Inc.*, 514 F. Supp. 2d 397 (N.D.N.Y. 2007)............................10

*Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368 (11th Cir. 1998) ..............................................14

*Patrickson v. Dole Food Co.*, 251 F.3d 795 (9th Cir. 2001),
    *aff'd in part, cert. dismissed in relevant part*, 538 U.S. 468 (2003)........................................14

*Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986) ...............................................14

*Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022) ..............................................12

*Rodriguez v. FDIC*, 140 S. Ct. 713 (2020) ........................................................................13, 14, 15

*Taylor v. Lewis*, 772 F. Supp. 2d 1040 (E.D. Mo. 2011)..................................................................4

*Tex. Indus., Inc. v. Radcliff Maters., Inc.*, 451 U.S. 630 (1981) ...............................................12, 13

*Torres v. S. Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997)......................................................14

*Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*,
      119 F.3d 619 (8th Cir. 1997) ................................................................................................4

*Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189 (2012) ................................................13, 14

## Statutes

28 U.S.C. § 1331..........................................................................................................................1, 3, 5

Ark. Code Ann.
      § 4-88-107(a)(10)....................................................................................................................6
      § 4-88-113 ...............................................................................................................................3
      § 4-88-104 ...............................................................................................................................3

## Other Authorities

Op. & Order, *Indiana v. TikTok, Inc*., No. 1:23-cv-13-HAB (N.D. Ind. May 23, 2023),
      Doc. 37 ....................................................................................................1, 5, 7, 8, 11

Not. of Removal, *Indiana v. TikTok, Inc*., No. 1:23-cv-13-HAB (N.D. Ind. Jan. 6, 2023),
      Doc. 1 .....................................................................................................................................1

**INTRODUCTION**

The State of Arkansas alleges that Defendants TikTok and ByteDance (collectively, "TikTok") have violated the Arkansas Deceptive Trade Practices Act by deceiving Arkansas citizens about the risks of using TikTok. This is a run-of-the-mill state-court case. Yet TikTok argues that this case belongs in federal court because TikTok's conduct *also* implicates foreign-policy and national-security issues that the federal government might address. In other words, TikTok argues that the sheer scope of the problems it has created enables it to choose its preferred forum.

This argument is meritless, as another federal court recently recognized in the exact same posture. The State of Indiana has also sued TikTok for violating that state's consumer-protection law. As in this case, Indiana alleges that TikTok collects users' personal information without telling them that this information might be shared with China. As in this case, TikTok removed to federal court on the theory that the state's state-law claim arose under federal law, creating federal-question jurisdiction under 28 U.S.C. § 1331. The court rejected that theory and remanded to state court, noting that TikTok had failed to point to "*any* question of federal law that would need to be decided." Op. & Order at 6, *Indiana v. TikTok, Inc.*, No. 1:23-cv-13-HAB, 2023 WL 3596360 (N.D. Ind. May 23, 2023), Doc. 37 ("N.D. Ind. Remand Order").

That analysis necessarily applies here, where TikTok filed functionally the same Notice of Removal as it filed there. *Compare* Not. of Removal, Doc. 2 (May 9, 2023), *with* Not. of Removal, No. 1:23-cv-13-HAB (N.D. Ind. Jan. 6, 2023), Doc. 1. Federal-question jurisdiction requires a question of federal law, and no such question can be found in the Complaint. Whether TikTok is liable under Arkansas law for deceiving Arkansas consumers does not depend on the construction of any federal statute or other source of federal law. Nor is it one of the limited subjects that arise

under federal common law, which the Complaint does not invoke. This case is a pure matter of state law and should be remanded to the state court where it was filed.

## BACKGROUND

Defendant TikTok Inc. is incorporated in the United States and operates a digital platform where users may post and view short videos through their smartphones and tablets. By interacting with the platform, users reveal a vast amount of sensitive personal information—their locations, interests, and much else—that TikTok collects. TikTok tells users as much in its privacy policy. *See* Compl. ¶¶ 39, 45–49, *Arkansas v. TikTok, Inc*., No. 70CV-23-135 (Ark. Cir. Ct. Union Cnty. Mar. 28, 2023), Doc. 3 ("Compl."). TikTok does not tell users that their data is available to the Chinese Government and the Communist Party.

Through its website and other public statements, TikTok assures Arkansas consumers that their data is protected by robust protocols overseen by a U.S.-based team, that TikTok has never provided user data to the Chinese Government and never would, and that "[n]one of [its] data is subject to Chinese law." *Id*. ¶¶ 102–07 (internal quotation marks omitted). As alleged in the Complaint, these statements are false, deceptive, and misleading. TikTok is owned by Defendant ByteDance Ltd., a multinational company headquartered in Beijing. ByteDance is subject to Chinese law, including laws mandating cooperation with China's intelligence services. *See id*. ¶¶ 71–101. Thus, TikTok's user data is available to persons and entities who must make that data available to the Chinese Government, which has shown an interest in such data for espionage, coercion, and other purposes. *See id*. ¶ 5. TikTok endeavors to obscure its "China association" through its U.S. privacy policy, which purports to inform users about how TikTok collects and shares their information but omits any reference to China. *Id*. ¶¶ 12, 170.

2

These misrepresentations violate the Arkansas Deceptive Trade Practices Act by misleading TikTok's Arkansas users about how their personal information may be shared and used. The Arkansas Attorney General brought this suit in Arkansas state court against TikTok and its parent ByteDance[1] on behalf of the State pursuant to his authority under Ark. Code Ann. §§ 4-88-104 and 4-88-113. The Complaint asserts seven claims for violations of the Arkansas Deceptive Trade Practices Act. Each claim explicitly states: "This claim arises exclusively under Arkansas law and involves no issue of federal law. In any event, the State forswears any claim to relief in this action on any theoretical basis of federal law." Compl. ¶¶ 250, 254, 258, 262, 266, 270, 276. TikTok nevertheless removed the case to this Court on the theory that the case arises under federal law. *See* Not. of Removal ¶ 13.

## ARGUMENT

TikTok asserts federal jurisdiction under 28 U.S.C. § 1331, which gives federal courts jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States," *i.e.*, federal law. "A case arises under federal law within the meaning of § 1331" in two scenarios: if "federal law creates the cause of action" or if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (cleaned up). This second category is "special and small." *Id*. at 699. TikTok seeks to fit this case into that category on the ground that the State's state-law claims implicate "core federal interests in foreign affairs and national security." Not. of Removal ¶ 15. But TikTok also contends that those "uniquely federal interests" mean that the State's claims

---

[1] ByteDance Ltd. is also the parent of TikTok Pte. Ltd. and ByteDance Inc., the other Defendants in this action. *See* Compl. ¶¶ 40–42.

are "governed by federal common law" and thus arise under federal law for that reason as well. *Id.* ¶ 29.

The party that removes to federal court bears the burden to establish federal jurisdiction. *See, e.g.*, *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). And "a district court is required to resolve all doubts about federal jurisdiction in favor of remand." *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997). But there is no doubt here. TikTok's arguments are meritless.

## I.    Federal-Question Jurisdiction Requires a Federal Question.

TikTok's first argument relies on the *Grable* standard, under which "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *accord Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). "[T]he Supreme Court has noted that matters that will properly merit federal jurisdiction under *Grable* will be rare." *Taylor v. Lewis*, 772 F. Supp. 2d 1040, 1045 n.5 (E.D. Mo. 2011) (internal quotation marks omitted).

This case does not have a federal issue. TikTok asserts that "foreign affairs and national security" are "core federal interests." Not. of Removal ¶ 15. And that is certainly true. But this case is not about the United States' relationship with China or any other question of foreign affairs or national security. The State has not asked the courts to address any such issues. Nor is this case about whether TikTok is or should be allowed to make user data available to the Chinese Government. This case is about whether the Arkansas Deceptive Trade Practices Act allows TikTok to continue lying to Arkansas consumers about what happens with their data.

TikTok accordingly fails to identify any question of federal law—that is, any issue requiring the construction of "the Constitution, laws, or treaties of the United States"—that the Court would need to decide to resolve the State's state-law claims. 28 U.S.C. § 1331. Without a federal question, there is no need to apply the *Grable* standard. After all, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial *questions of federal law*." *Grable*, 545 U.S. at 312 (emphasis added); *see also, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 384 n.4 (2016) ("For as long as we have contemplated exercising federal jurisdiction over state-law claims necessarily raising *federal issues*, we have inquired as well into whether *those issues* are 'really and substantially' disputed." (emphases added)).

The Northern District of Indiana correctly rejected the same *Grable* argument that TikTok makes here. That court noted that the relevant caselaw, including the Supreme Court's decisions in *Grable* and *Empire Healthchoice*, draw a "clear line": "Cases that require a district court to decide questions of federal law, even if pleaded as a state-law claim, are removable under *Grable*. Cases that only raise federal issues . . . are not." N.D. Ind. Remand Order at 5. The federal government's concern with TikTok presented, at most, "federal issues," not questions that had "anything to do with Indiana's legal claim." *Id*. at 6. Thus, there was no federal legal question for the court to adjudicate under § 1331, and the court did not even consider the remaining *Grable* factors. This analysis is consistent with Eighth Circuit precedent. *See Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 919 (8th Cir. 2009) (rejecting *Grable* jurisdiction absent "the required federal question"); *see also Cooper Clinic, P.A. v. Mercy Clinic Fort Smith Communities*, No. 2:14-cv-2233, 2015 WL 437571, at *2 (W.D. Ark. Feb. 3,

2015) (citing *Bennett v. Southwest Airlines Co.*, 484 F.3d 907 (7th Cir. 2007), on which the Northern District of Indiana likewise relied).

As in the Northern District of Indiana, TikTok does not argue that adjudicating the State's claims requires resolving any question of federal law. Rather, it argues that the federal government has the dominant role to address the national-security implications of TikTok's data collection. But this suit turns on whether TikTok's representations to Arkansas consumers about its data collection constitute "an unconscionable, false, or deceptive act or practice." Ark. Code Ann. § 4-88-107(a)(10). That question does not require the resolution of any federal issue. As in the Northern District of Indiana, therefore, TikTok fails to justify applying the *Grable* factors.

TikTok also fails to satisfy those factors. The first—whether "a state-law claim necessarily raise[s] a stated federal issue"—cannot be met when TikTok cannot so much as state a relevant federal issue. *Grable*, 545 U.S. at 314. TikTok points out that, "to adjudicate [the State's] claim, the court would need to evaluate whether TikTok is deceiving Arkansas consumers 'about the risks of the Chinese Government's and/or Communist Party's access to their data.'" Not. of Removal ¶ 22 (quoting Compl. ¶ 169). But there is nothing "special" about that. *Empire Healthchoice Assur.*, 547 U.S. at 699. Consumer-fraud cases generally involve an alleged deception about a feature of a given product. In this case, the relevant feature simply happens to be the accessibility of TikTok users' personal information to a foreign government. And notwithstanding TikTok's attempt to rewrite a paragraph of the Complaint, the State is not asking the courts to "evaluate" the problems that follow from "ByteDance's ownership and control of TikTok" or "the influence that the Chinese Government and Communist Party have over ByteDance." Not. of Removal ¶ 22 (quoting Compl. ¶ 274 (cleaned up)). This is a case about TikTok's deception of Arkansas consumers in violation of the Arkansas Deceptive Trade Practices Act.

TikTok's potential defenses cannot create a federal question, either. "It is firmly established that a federal defense . . . does not provide a basis for removal." *Cent. Iowa Power Co-op.*, 561 F.3d at 912. Even accepting TikTok's assertion that it continues to "negotiate" data-security measures with the Committee on Foreign Investment in the United States ("CFIUS"), TikTok still fails to identify any federal doctrines that might consequently require dismissal of the State's unrelated state-law claims—despite raising the same removal arguments in Indiana months ago.

Indeed, TikTok still fails to identify any federal actions that this case implicates. It notes that CFIUS, a federal body that reviews foreign investment in the U.S. for national-security impact, has been investigating the risks of the Chinese Government's access to TikTok's U.S.-user data. CFIUS can continue doing so as this action proceeds and after TikTok is enjoined from deceiving Arkansas consumers, just as CFIUS and TikTok can continue any negotiations and implement any negotiated protections for U.S.-user data that result. Nor would the relief requested in this case, which would be premised on TikTok's ability to offer TikTok in the United States, prevent the federal government from exercising its authority to limit that ability—in other words, from reissuing versions of the executive order and regulations that TikTok cites. As TikTok notes, these measures were enjoined through litigation brought by TikTok itself, which was dismissed after the President withdrew those measures. This case is not a "collateral attack." *See* N.D. Ind. Remand Order at 6–7.

In short, how the federal government addresses the security risks posed by the disclosure of Americans' private data to the Chinese Government has no bearing on the question whether an American company's *statements about such disclosure* violate the Arkansas Deceptive Trade Practices Act. But even if this suit did have some speculative impact on the Executive Branch's

foreign-policy decisions (which TikTok fails to identify), federal-question jurisdiction still would not exist. A question of federal law does not arise from a gestalt sense of federal interest in a given subject. And no federal question within the meaning of § 1331 arises here from the national-level strategic considerations TikTok discusses. As the Northern District of Indiana observed, the relevant question for the consumer-protection claims at issue is simply "*whether* [consumers'] information is accessible" to the Chinese government, which "is a straightforward *factual* question to be answered in the context of a state statute." *Id*. at 6 (second emphasis added).

A federal legal issue also cannot be "actually disputed"—the second *Grable* factor—if it does not exist. *Gunn*, 568 U.S. at 258. The parties will dispute whether consumers' information is accessible to the Chinese Government in the course of litigating whether TikTok has misled Arkansas consumers. But this is a "*factual*" dispute, Not. of Removal ¶ 26 (emphasis added), not a question of federal law, and as such is not appropriate for removal under *Grable. See Empire Healthchoice Assur.*, 547 U.S. at 701 (holding that a "fact-bound and situation-specific" claim could not "be squeezed into the slim category *Grable* exemplifies").

Nor can a nonexistent legal issue be a "substantial" legal issue, the third *Grable* factor. *Gunn*, 568 U.S. at 258. In this context, substantiality depends on "the importance of the issue to the federal system as a whole." *Id*. at 260. Substantial issues might arise if the "claim was triggered . . . by the action of any federal department, agency, or service," *Empire Healthchoice Assur.*, 547 U.S. at 700, or if the case implicates a federal statute or other instrument that requires a "unifor[m]" interpretation across numerous cases, *Grable*, 545 U.S. at 312. "The common thread that runs through all such suits is that they entail some appreciable measure of risk to the federal sovereign." *AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F.4th 551, 558 (1st Cir. 2021). No such risk exists here. The State's claims were not triggered by, and in no way challenge,

any action by the federal government. Any *future* action that the federal government might take against TikTok in the interest of national security—the only discernible basis of TikTok's purported concern for federal interests—is not only hypothetical, but, as shown, it would also not be impeded by a state-court judgment preventing TikTok from continuing to lie to Arkansas consumers and awarding relief for their past misrepresentations. And the interpretation of the Arkansas Deceptive Trade Practices Act is important to the federal system only in the sense that, under basic *Erie* principles, federal courts will apply the *Arkansas state courts'* interpretation of that Act. This factor thus only further supports sending this case back to state court.

Even where all the above factors are met, "the exercise of federal jurisdiction is subject to a possible veto" under the last *Grable* factor if it would disrupt the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 313–14. Asserting federal-question jurisdiction over a case without a federal question would, by definition, disrupt the balance that Congress struck in granting such jurisdiction under § 1331. Even claims with more obvious federal elements than the State's (that is, with at least some federal element) are insufficient for federal jurisdiction. Violations of federal law are "commonly given negligence per se effect in state tort proceedings," yet, as *Grable* observed, "[a] general rule of exercising federal jurisdiction over state claims resting on" such violations would "heral[d] a potentially enormous shift of traditionally state cases into federal courts." 545 U.S. at 318–19; *accord Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 811–12 (1986). As other courts have recognized, "[e]xercising federal question jurisdiction over any state law claim that references a federal consumer protection statute" would have the same result. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012). So would exercising federal jurisdiction over a complaint, like the State's,

that does not reference any federal statute but that happens to bear an oblique connection to subjects of federal policy.

As several courts have also recognized, federalism concerns are especially acute where, as here, a state's Attorney General brings a "*parens patriae* action in state court to enforce its own state consumer protection laws." *Id.* "Under these circumstances, the 'claim of sovereign protection from removal arises in its most powerful form.'" *Id.* (quoting *W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011)); *see also, e.g.*, *New York ex rel. Cuomo v. Dell, Inc.*, 514 F. Supp. 2d 397, 401 (N.D.N.Y. 2007) ("This principle is even more relevant when, as here, the case was brought by the state itself."). It further bears note that this last *Grable* factor focuses on the "balance of federal and state *judicial* responsibilities." *Grable*, 545 U.S. at 314 (emphasis added). Federal courts have no more competence or authority than state courts to make foreign-policy judgments, which the State has not asked any court to make. *See, e.g.*, *Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 327–28 (1994). Asserting federal jurisdiction on the basis of such policy issues, as TikTok invites the Court to do, thus would not only disrupt the balance between federal and state courts, but would also risk disrupting the balance of power between the federal branches.

In the end, this case is nothing like *Grable*. The "only issue contested" in that case was a "nearly pure issue of [federal] law" that could affect "numerous" other cases and that was therefore proper for federal resolution. *Empire Healthchoice Assur., Inc.*, 547 U.S. at 681 (cleaned up). The claims in this case are "traditional state-law causes of action," *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1267 (10th Cir. 2022), and success "does not depend on even a smidgeon of federal law," *Chicago Trib. Co. v. Bd. of Trs. of Univ. of Ill.*, 680

10

F.3d 1001, 1003–04 (7th Cir. 2012). Under controlling precedent, and the consistent precedent throughout the circuits, such claims do not establish federal-question jurisdiction.

## II. The State's State-Law Claims Do Not Arise Under Federal Common Law.

TikTok also contends that this case "implicates uniquely federal interests such that it is governed by federal common law." Not. of Removal ¶ 29. The Northern District of Indiana made quick work of this argument, noting that "the adequacy of Defendants' data privacy disclosures" is "a matter of state law" and thus does not "implicat[e] any of the 'narrow areas' in which federal common law exists." N.D. Ind. Remand Order at 8 (quoting *Tex. Indus., Inc. v. Radcliff Maters., Inc.*, 451 U.S. 630, 641 (1981)). The argument need not detain this Court long, either.

Although this argument is cast differently than TikTok's primary argument, its logic is the same and thus has the same flaws. The State's claims are not "founded upon federal common law." Not. of Removal ¶ 29 (quoting *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 847, 850 (1985)). The Complaint does not cite any federal common law. Rather, the State's claims are founded on the Arkansas Deceptive Trade Practices Act. And just as it fails to identify a question of federal law embedded within the State's claims, TikTok fails to identify any doctrine of federal common law that would apply to, much less "gover[n]," the State's claims. *Id*. Instead, TikTok's argument is once again fashioned of generalities: TikTok's data-gathering raises foreign-policy concerns; such concerns are dealt with at the federal level; thus, according to TikTok, this case belongs in a federal court. *See id*. ¶¶ 30–31. But again, federal jurisdiction does not derive from some general sense of "fit." It derives from federal statutes and is "limited to those subjects encompassed within a statutory grant of jurisdiction." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (internal quotation marks omitted). Section 1331 grants jurisdiction only in actions arising under federal law. And regardless, the State's claims have nothing to do with

American foreign policy. They are consumer-protection claims of the sort that state courts adjudicate all the time.

TikTok also cites no support for construing these state-law consumer-protection claims as federal-common-law claims. Federal law can serve as a basis for removal only if it can be said that the law "wholly displaces the state-law cause of action," *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003), such that "Congress has clearly manifested an intent" to make the claim removable. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987). But federal *common law* has never been held to so displace a state-law cause of action that it can become a basis for removal. And the last few years have seen a "parade" of circuit opinions rejecting such a theory. *City of New York v. Chevron Corp.*, 993 F.3d 81, 93 (2d Cir. 2021); *see Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 55 (1st Cir. 2022); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 708 (3d Cir. 2022); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 208 (4th Cir. 2022); *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020); *Bd. of Cnty. Comm'rs of Boulder Cnty.*, 25 F.4th at 1262. As the Eighth Circuit recently observed, federal common law, even where it exists, "does not express Congressional intent of any kind—much less intent to completely displace any particular state-law claim." *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 710 (8th Cir. 2023).

To be sure, courts have applied federal common law to claims that do in fact implicate "relations with foreign nations," such as claims that challenge the validity of a foreign state's acts within its own territory. *Tex. Indus., Inc.*, 451 U.S. at 641 & n.13. But these types of cases are few, and this case does not fit any of their fact patterns. *See City of New York*, 993 F.3d at 81, 91–92, 98, 101 (holding that a claim filed in federal court for damages from "the effects of [greenhouse-gas] emissions made around the globe over the past several hundred years" was "beyond the limits

of state law" and more akin to a dispute over "interstate air or water pollution," another established enclave of federal common law, but still finding no federal common law to apply).

TikTok's theory thus cannot be that the State's state-law claims are claims under the federal common law of foreign relations. Rather, TikTok asks the Court to expand the notion of federal common law to govern any claim that might conceivably impact foreign relations. No court has endorsed that extreme position, which would overexpand the "modest role" that federal common law is meant to play. *Rodriguez v. FDIC*, 140 S. Ct. 713, 717 (2020). The "unusual exercise of lawmaking by federal courts" is appropriate in only "a few and restricted instances," *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313–14 (1981) (internal quotation marks omitted), specifically where "Congress has given the courts the power to develop substantive law"—not the case here—or where "a federal rule of decision is necessary to protect uniquely federal interests." *Tex. Indus., Inc.*, 451 U.S. at 640 (internal quotation marks omitted). Put differently, "if federal common law exists, it is because state law *cannot be used*." *Milwaukee*, 451 U.S. at 313 n.7 (emphasis added). TikTok has offered no reason why Arkansas law cannot be used to protect Arkansas consumers from deception. There is none. And the mere fact that enclaves of federal common law exist to address other specific federal interests, which is all that TikTok's citations ultimately show, *see* Not. of Removal ¶¶ 30–31, does not support extending federal common law here.

Nor for that matter has TikTok identified a "rule of decision" that even a federal court could develop to address extraneous foreign-policy concerns. "In general, the [Federal] Judiciary has a responsibility to decide cases properly before it, even those it would gladly avoid." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 194 (2012) (internal quotation marks omitted). If this case were properly before this Court, then the Court would need to decide the case by applying the

Arkansas Deceptive Trade Practices Act to the facts alleged. That analysis would not involve a nonjusticiable "political question." *Id*. at 195. And even if the Court's decision had some hypothetical political implications, "courts cannot avoid their responsibility merely because the issues have political implications." *Id*. at 196 (internal quotation marks omitted); *see also Patrickson v. Dole Food Co.*, 251 F.3d 795, 803 (9th Cir. 2001) ("Federal judges cannot dismiss a case because a foreign government finds it irksome, nor can they tailor their rulings to accommodate a non-party."), *aff'd in part, cert. dismissed in relevant part*, 538 U.S. 468 (2003).

TikTok also find no support in a handful of out-of-circuit cases suggesting that "there is federal question jurisdiction over actions having important foreign policy implications." *Republic of Philippines v. Marcos*, 806 F.2d 344, 353 (2d Cir. 1986). In one case, that suggestion was not necessary to federal jurisdiction. *See Patrickson*, 251 F.3d at 801 (noting that the claims in *Marcos* "rested on [a] Philippine executive order," thus implicating the well-established "act of state" doctrine of federal common law, and that "the Second Circuit may well have grounded federal jurisdiction entirely on that basis"). In another, the court rejected federal jurisdiction. *See Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1378 (11th Cir. 1998). Last is a suit brought by a class of Peruvian citizens against a company based in Peru over mining operations in Peru, where Peru had "protested the lawsuit" and the court found that the suit itself struck at Peru's "vital economic" and "sovereign interests." *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542–43 (5th Cir. 1997). None of those facts are present here. And to the extent that any of these cases suggests a more than "modest" role for federal common law, *Rodriguez*, 140 S. Ct. at 717, that suggestion is incorrect for the reasons already explained here and by the Ninth Circuit in *Patrickson*. Congress has granted federal jurisdiction over federal questions. A federal question does not arise merely from "the pendency of a lawsuit on a subject that affects [a] government's sovereign interests." *Patrickson*,

251 F.3d at 803. And federal common law is not otherwise a license to assert federal jurisdiction over suits with no federal issues. Such a notion is antithetical to the principle that "there is no federal general common law." *Rodriguez*, 140 S. Ct. at 717 (internal quotation marks omitted). Appropriately, therefore, the Eighth Circuit has not adopted these cases' suggestion. Neither did the Northern District of Indiana. And neither should this Court.

Construing the State's claims as federal-common-law claims would require "a potent mix of judicial lawmaking and encroachment on our federalist structure," which there is no basis for administering here. *City of New York*, 993 F.3d at 90. The State's claims do not derive from any recognized or conceivable doctrine of federal common law. They thus do not present any federal question. And because there is no federal jurisdiction over any of the State's claims pursuant to § 1331, there can of course be no "supplemental jurisdiction" over any claims pursuant to § 1367, either. Not. of Removal ¶ 32.

**CONCLUSION**

This case should be remanded to the Circuit Court of Union County, Arkansas.

Dated: June 8, 2023

Respectfully submitted,

**TIM GRIFFIN**
**ATTORNEY GENERAL**

By: _/s/Kate Donoven_
Kate Donoven, ABN 98189
Senior Assistant Attorney General
Telephone: (501) 682-8114
Facsimile: (501) 682-8118
Kate.Donoven@ArkansasAG.gov

Charles J. Harder, ABN 86080
Deputy Attorney General
Telephone: (501) 682-4058
Facsimile: (501) 682-8118
Chuck.Harder@ArkansasAG.gov

Robert M. Sexton, ABN 1996106
Rainwater, Holt & Sexton, P.A.
801 Technology Drive
Post Office Box 17250
Little Rock, AR 72222
Telephone: (501) 868-2500
Facsimile: (501) 868-2508
Sexton@RainFirm.com

David H. Thompson*
Brian W. Barnes*
Joseph O. Masterman*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com

*Admitted *pro hac vice*

*Counsel for Plaintiff, State of Arkansas*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Kate Donoven, do hereby certify that on this 8th day of June, 2023, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system. I further certify that such filing will accomplish service upon counsel of record in this case.

<u>/s/Kate Donoven</u>
Kate Donoven

*Counsel for Plaintiff, State of Arkansas*

17